IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| DANILO MIRANDA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-04-2609 |
| | * | |
| UNIVERSITY OF MARYLAND, | * | |
| COLLEGE PARK, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Danillo Miranda ("Plaintiff" or "Miranda"), a former employee of Defendant University of Maryland, College Park ("Defendant" or "University"), has brought this employment discrimination action alleging discrimination on the basis of race, national origin, and age in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Age Discrimination and Employment Act of 1967 ("ADEA"), 29 U.S.C. § et seq. Currently pending before the Court is Defendants' Motion for Summary Judgment [43]. Plaintiff contests this motion. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. On October 24, 2006, the Court held a hearing concerning the motion and heard from all the parties. Having considered the arguments of the Plaintiff and the Defendant, this Court will GRANT Defendant's motion for summary judgment for the reasons set forth more fully below.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to the Plaintiff. Miranda, a 52 year-old resident alien of Filipino national origin, was hired by the University on October 26, 1998 to

serve as a cook in the University's Department of Dining Services. In July 1999, the University promoted Miranda to the position of sous chef, a managerial position, in the University's Department of Dining Services. On July 13, 2003, Miranda was terminated from his employment as part of a layoff action. At the time of Miranda's layoff, six supervisory positions were eliminated, while six new supervisory positions were created and offered to persons not of Miranda's age, race, or national origin.

On August 10, 2004, Miranda filed a complaint alleging that his layoff from his position as a sous chef at the University, following budget cuts that resulted in the University's decision to close the dining hall where he worked, discriminated against him on the basis of race (Asian), national origin (Philippines), and age (52). He also alleges that the University's failure to rescind his layoff notice and its failure to hire him into a subsequently vacant position at the Hillel House were discriminatory. On September 24, 2004, Defendant filed a motion to dismiss count III (ADEA claim) of the Plaintiff's complaint pursuant to Rule 12(b)(6). On February 9, 2004, this Court issued a memorandum opinion and order granting Defendants' motion to dismiss count III of the Plaintiff's complaint (ADEA claim). Currently before the Court is Defendant's motion for summary judgment (Title VII Claims: Race & National Origin). The Plaintiff opposes the motion. The motion is ripe, and the Court now issues this opinion.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by

showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. When faced with a motion for summary judgment, Rule 56(e) requires the non-moving party "to go beyond the pleadings" and show the existence of a genuine issue for trial, by way of affidavits, deposition testimony, or answers to interrogatories. *Id.* at 324; *see also Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS
### *Applicable Title VII Principles*

Under Title VII it is "an unlawful employment practice for an employer ... to discriminate against any individual ... because of such individual's ... race or ... national origin." 42 U.S.C. §2000 e-(a)(1). To survive a motion for summary judgment, a Title VII plaintiff must either: 1) present direct or circumstantial evidence or discriminatory animus or 2) proceed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); *Hill v. Lockheed Martin Logistics Mgmt. Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004), *cert. dismissed 543 U.S. 1132 (2005); Diamond v. Colonial Life & Accidents Ins., Co.,* 416 F.3d 310, 318 (4th Cir. 2005). Regardless of the type of evidence the plaintiff offers, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Hill*, 354 F.3d at 286.

In this case, Miranda has not identified any direct evidence of discriminatory intent, and thus the *McDonnell Douglas* scheme of proof applies. The plaintiff must make out a *prima facie* case

of discrimination, which in turn, raises a preliminary inference of discriminatory intent. To do so, the plaintiff must show that: 1) he is a member of a protected class, 2) he was subjected to an adverse employment decision, 3) at the time of the adverse employment decision, he was performing his job duties at a level that met his employer's legitimate expectations (or he was qualified for the position he sought), and 4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Hill,* 354 F.3d at 285; *see also Dugan v. Albermarle County School Board*, 293 F.3d 716, 720-21 (4th Cir. 2002) (applying *McDonnell Douglas prima facie* case requirements in a reduction force case).

If the plaintiff establishes a *prima face* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *McDonnell Douglas*, 411 U.S. at 802*.* Once the defendant articulates its legitimate, nondiscriminatory rationale, the inference raised by the plaintiff's *prima facie* case is extinguished. *St. Mary's Honor Ctr. V. Hicks,* 509 U.S. 502, 507 (1993) (once the employer meets its burden of production, the inference of discrimination "drops from the case"). The plaintiff must then show that the defendant's proffered explanation for its action is not the true reason, but instead, is merely a pretext for discrimination. *Id.* at 507-08*; Hill*, 354 F.3d at 285; *McDonnell Douglas*, 411 U.S. at 804. At this point, to survive summary judgment, the plaintiff must show that the defendant's legitimate, nondiscriminatory reason is "unworthy of credence" or the plaintiff must offer "other forms of circumstantial evidence sufficiently probative of discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). Throughout this burden-shifting scheme, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cnty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

In this case, Miranda alleges that the University discriminated against him when: 1) the University laid him off, 2)the University failed to rescind his notice of layoff, and 3) when the University failed to hire him for an opening at the Hillel House, a center for Jewish studies. Defendant, on the other hand, set forth in detail its legitimate non-discriminatory reasons for their actions: 1) the University's decision to lay off the people who worked at North Woods, including Miranda, was based on the Defendant's race-neutral decision to close the dining facility in the face of University-wide mandated expense reductions, 2) the University's decision to withdraw the lay off notice for the catering chef when another employee announced her retirement reflects the Defendant's race-neutral business judgment that it should preserve its catering operations rather than fill the retiree's position, and 3) the University's decision to offer the Hillel position to an applicant other than Miranda, reflects the straightforward fact that other applicants' experience, expertise, and education were much better suited to the position than Miranda's. As the Fourth Circuit has explained, when faced with an employer's legitimate, nondiscriminatory rationale for its employment decision, it is not the province of this Court "to decide if the reason was wise, or fair or correct, ultimately, as long as it truly was the reason" for the decision. *De Jarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (quoted with approval in *Dugan*, 293 F.3d at 723).

After reviewing the record and listening to the arguments presented at the hearing, the Court does not believe that the Plaintiff makes out a *prima facie* case of employment discrimination based on race or national origin. Although the Plaintiff is able to make out prongs one, two, and three, he fails to make out the fourth prong. Miranda fails to establish that the position he was terminated from "remained open or [] was filled by a similarly qualified applicant outside the protected class." *McDonnell Douglas*, 411 U.S. at 802. Even assuming that Miranda makes out a *prima facie* case,

the University has articulated a legitimate nondiscriminatory reason for its employment action: the massive University-wide budget cuts. In addition, Miranda has failed to show that the University's proffered explanation for its action is not the true reason, but instead, is merely a pretext for discrimination. The Court will discuss each of the Defendant's actions/inactions, as challenged by the Plaintiff, in turn.

*I.) The Decision to Lay Off Employees, Including Miranda*

In 2003, after significant State cutbacks in the University's budget, the Defendant was directed to reduce its budget by a total of $2.3 million. The Defendant identified services and costs that could be reduced or eliminated with the least detrimental impact to the University community. As a result, North Woods, the student dinning facility where Miranda worked, in addition to others, was to be closed. The University gave each of the laid off exempt employees ninety (90) days written notice in advance of the layoff.

Even assuming *arguendo* that Miranda could make out a *prima facie* case of discrimination with respect to his layoff, the Defendant has articulated a legitimate nondiscriminatory reason for its decision, and there are no facts suggesting that its articulated reason is not the true reason for its decision. The decision to close North Woods and lay off Plaintiff and the other North Woods employees was based on a race-neutral (and national origin-neutral) factor: the mandated, University-wide budget reductions the Defendant faced in 2003. There is no evidence that the individuals responsible for the layoff decisions harbored any discriminatory animus toward the Plaintiff. The only facts Miranda cites to support his allegation that he was laid off because of his race and national origin are his subjective beliefs and speculation about the attitudes of his colleagues. Speculation is not enough to create a genuine factual dispute.

*II.)  The Decision to Rescind Schraa's Lay Off Notice*

The Committee assigned to formulate the budget reductions considered whether it should reduce the capacity of its catering operations, where an employee named Thomas Schraa was the catering chef.  The Committee recommended that the University's catering capacity be reduced. However, when an employee named Rosalie Faulk unexpectedly announced that she would be retiring from her full time position as a food service aide, the University was able to use the savings from Faulk's position to restore the catering chef position.  As a result, the Defendant  notified Schraa that he would not be laid off.

The University argues that Schraa was not an employee who was similarly situated to Miranda for disparate treatment purposes and, in any event, the University has articulated a compelling, legitimate nondiscriminatory explanation for its decision to recall Shraa.  The University's contention that Schraa was not similarly situated is evidenced by the fact that Schraa, unlike Miranda, did not work at North Woods, and occupied a position as a catering chef - a different position than Miranda's.  Even if Schraa could be deemed similarly situated to Miranda for disparate treatment purposes, Miranda has enunciated the race-neutral rationale that informed its decision to call back Shraa.  There are no facts that suggest that the Defendant's articulated reason is "unworthy of credence," or that the explanation is false.  *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 147 (2000); *Anderson v. Westinghouse Savannah River Co., et al.*, 406 F.3d 248, 269 (4th Cir. 2005)

The University's decision was a race-neutral decision that affected the person who held the position of catering chef, just as its decision to close North Woods.  In the absence of any genuine dispute regarding the nondiscriminatory basis of the Defendant's business decision to rescind

7

Schraa's layoff notice in order to preserve its catering operations and revenues, the burden has shifted to the Plaintiff to prove that the Defendant's proffered evidence is mere pretext for a racially motivated reason. The Plaintiff has failed to provide such evidence.

### III.) *The Hillel House Position*

In the Fall of 2003, the University posted an opening for the position of Hillel Unit Administrator, whose job duties included overseeing all aspects of the Hillel dining program including the kosher meal plan, operating the Sabra Deli, and catering for on-site Hillel House events. The Defendant assembled a search committee to recommend a person for this position. The committee reviewed applications and eventually recommended six candidates, including Miranda, for an interview. Following the interview, Berry Richard and Todd Bogan were selected as the top one and two candidates, respectively. After Richards declined the position, Bogan was offered a temporary position, and then later the permanent basis with no increase in pay.

In contrast to Richard and Bogan, Miranda lacked not only the administrative and supervisory experience for the position, but he also lacked experience with kosher cooking. He had no experience planning and preparing kosher meals nor had he ever been responsible for the operation of an entire unit. In addition, Miranda had only incidental supervisory experience and no experience with fiscal and administrative reporting requirements of the job. Furthermore, Miranda was never responsible for food inventory controls or for meeting cost restrictions. Moreover, Miranda had limited experience with the Defendant's sophisticated computer software that allowed it to centralize its purchasing operations and little experience with the computerized Point-of-Service (POS) system. Miranda also lacked experience with the auditors or preparing financial and operational reports. Lastly, Miranda had limited experience in menu and recipe development, and

had no experience in marketing. Therefore, Miranda's presumption that he and Bogan were similarly situated within the meaning of *McDonnell Douglas*, is not grounded in any evidence presented before the Court. The Court finds that Bogan's experience and education were more expansive than Miranda's. Even if Miranda could make out a *prima facie* case, the University has met its burden of setting forth its legitimate, nondiscriminatory explanation for its hiring decision. Therefore, the burden has shifted to the Plaintiff to prove that the Defendant's proffered evidence is mere pretext for a racially motivated reason. The Plaintiff has failed to provide such evidence.

## **CONCLUSION**

Miranda has failed to show that the University's rationale, as to each of the challenged actions, are "unworthy of credence." *See Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) Nor has he offered "other forms of circumstantial evidence sufficiently probative of discrimination." *Id*. The "facts" offered by the Plaintiff are either not in dispute, not supported by any evidence whatsoever, or are not relevant to the issues, and thus are not "material."

Because the University has met its burden of demonstrating that there is no material fact in dispute, the Plaintiff is obligated to come forward with specific facts showing that there is a genuine issue for trial. *See Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992) (*en banc*). In doing so, the Plaintiff cannot rely on unsupported conclusions, but must instead through affidavits, depositions, or other documentation, come forward with evidence of a genuine dispute regarding a legally significant fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). As the Supreme Court has explained, to survive summary judgment the nonmoving party must show "more than .... some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corop.*, 475 U.S. 574 , 586 (1986).  Miranda's long list of "facts" that he alleges are both material and disputed, and therefore fail to meet this burden.

For all of the aforementioned reasons, the Court will GRANT Defendant's Motion for Summary Judgment [43].  An Order consistent with this Opinion will follow.


Date:   November 20, 2006                            /s/
                                            Alexander Williams, Jr.
                                            United States District Court Judge